## Peter Bolz et al., Trustees, etc., v. Joseph Stuhl et al., Appellants.

*Contract of suretyship—Fraud—Failure to disclose material conditions.*

The concealment of a material fact will vitiate a contract of suretyship. When a contract of suretyship is entered into the surety is entitled to know all the material facts concerning it, and if the person for whose benefit the suretyship is contracted conceals any material fact of importance in the determination of the surety to undertake the contract such concealment is a fraud upon the surety and will vitiate the contract.

Argued Oct. 19, 1896. Appeal, No. 56, Nov. T., 1896, by defendants, from judgment of C. P. No. 4, Phila. Co., Dec T., 1893, No.    , on verdict for plaintiff. Before RICE, P. J., WILLARD, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Assumpsit on surety bond. Before WILLSON, J.

The plaintiffs were trustees of an unincorporated association

in the nature of a saving fund society having for its object the provision for sickness, want and death of its members. The defendant Joseph Stuhl was treasurer from 1870 to 1893, having been reëlected annually.

Defendants submitted, inter alia, the following point:

1. If the jury find from the evidence that at the time this bond was taken, the treasurer did not have any money in his hand, although on his account, the verdict must be confined to the money paid the treasurer after the bond was given. *Answer:* I decline to affirm that point. I do not understand the difference exactly between moneys in his hands and moneys in his account. If he had money then in his hands, as I have told you several times, for which he was accountable, for which he had not defaulted, then the plaintiffs are entitled to recover against the defendants, unless the defendants are relieved upon the ground that I have previously stated. [1]

Other facts are disclosed in the charge of the court, which is as follows:

This is a suit brought by the trustees of an unincorporated association against two defendants who were sureties upon a bond given by the treasurer of the association. It seems to be conceded upon all points that the treasurer proved unfaithful, and now the trustees ask that under the terms of the bond which the defendants entered into they shall make good to the company the loss to the association to the extent of the amount of this bond.

I have no question but what the defendants are liable under the terms of the bond, unless there be something to relieve them from liability, which I will refer to hereafter, to the extent or the amount of money which the treasurer may have received during the term for which he was elected, which practically means all the time that he was treasurer after the bond was made, and for any money which he had in his hands at that time.

I do not think the defendants are liable for any money which he had misappropriated previously, if he misappropriated any.

It is claimed that he had about $800 in his hands at the time the bond was made. If so, and if he squandered that money or misappropriated it—made away with it—then those sureties

would be liable, under the bond, to the extent of the amount of their bond for any other money which came into his hands, unless they are relieved by other circumstances.

I have said to you that if he did not have that money—if he had it, and if in a previous term he had made away with it, so that he could not be said to have it at that time—if he had defaulted previously—then they would not be liable for the amount of such default, but for the money that he had at the time when the bond was made, and for any other money which came into his hands, I regard them as liable under the terms of the bond, unless they are relieved by other circumstances.

Now upon that question, if upon the whole evidence you think they are liable, it is for you to settle as to the amount and as to whether or not that money was in the treasurer's hands at the time when the defendants, the sureties in the bond, entered into the obligation with the trustees which is evidenced by the bond.

It is claimed, however, on the other side, on the part of the defendants, that there is no liability, because they were imposed upon and induced to sign this bond fraudulently, and the ground of that claim is this : that the trustees knew that the treasurer had defaulted previously, and failed to reveal that fact to the defendants.

If you believe that evidence, that is, if you believe that the trustee knew that the treasurer was a defaulter, and then without communicating the fact to the sureties—in other words if they imposed upon the sureties—if they knew they were getting from them an obligation for a man who had proved to be unworthy—that is, unworthy in the sense of having cheated and defrauded the association—then the liability of the defendants would not exist.

But a mere knowledge that he was insolvent would not be sufficient to constitute such fraud. It is claimed here on the part of the plaintiffs that, so far as moneys which were in his hands specifically as treasurer were concerned, which it was intended that this bond should cover, they had never been abstracted—that they never knew of anything of the sort; that with reference to another sum of money, a larger sum of $1,210 or $1,300, there had been some arrangement made which perhaps has not been very clearly set before you, and that on account

of that arrangement the treasurer had given a check which was not honored.

At the same time, it is claimed that he was a man in good standing, that he bore a good name, and that he met demands upon him as treasurer until a much later period, and it is claimed that that circumstance did not inform the trustees of the association that he was a defaulter—that he had misappropriated the funds—that they may be regarded as being fraudulent, unfair, dishonorable, in entering into the obligation with the sureties which was entered into when the bond was made. That is the whole case. I have said that if the sureties, the defendants in this case, are liable under the terms of the bond, and under the circumstances as I have referred to, then they are only liable for the amount of the bond in any case, because you cannot get out of a pecuniary obligation more than there is in it.

The jury here retired, and after some time returned to the courtroom, where at their request they were further charged by the court as follows :

I have said to you before what I will attempt to repeat in substance, that the defendants are liable upon the bond given by them for whatever amount was in the hands of the treasurer at the time that bond was made—money for which they are accountable, and which it does not appear he had already misappropriated, and for whatever money came into his hands subsequently, excepting so far as he may have paid it out upon orders for the association, unless the defendants were fraudulently treated in being induced to enter into the bond.

[I have already told you that what constituted fraudulent treatment was not simply knowledge on the part of the trustees, the plaintiffs in this case, that the treasurer was insolvent—not necessarily that he had given a check which was not paid. It must appear that they were aware of the fact that he was a defaulter; that he had misappropriated or misused the funds of the association which were in his hands, before they can be regarded as having been fraudulent towards the sureties.] [2]

[As to the amount of money, I said substantially what I will try to repeat now, that the money must be regarded as being in

his hands if it had come there, if it does not appear in some way affirmatively that he had misused it.] [3]

[As to the $800, or thereabouts, I do not remember any evidence in the case that he had, previous to the time of which the bond was made, parted with it in any improper way. If it was in his hands to be accounted for, if it does not appear that he had misappropriated it, then the sureties on the bond were responsible, if otherwise they were responsible, unless they were relieved from responsibility upon the ground that they had been fraudulently induced to enter into the bond.] [4]

Verdict for plaintiffs for $600.    Defendants appealed.

. *Errors assigned* were (1) in declining defendants' first point, reciting same; (2–4) error in charge of the court, reciting same; (6) in submitting the case to the jury; (7) in allowing judgment to be entered on the verdict.

*Edward A. Anderson,* with him *John H. Fow,* for appellants. —If a creditor conceals from the surety the fact that the principal has been a defaulter, the surety will be discharged: Wilmington v. Ling, 18 S. C. 116; Franklin Bank v. Cooper, 86 Me. 179; Harrison v. Ins. Co., 8 Mo. App. 37; Ben. Association v. Smith, 70 Tex. 168.

The fraudulent concealment of a default by an employee will release the surety: Wayne v. Bank, 52 Pa. 343.

Silence when it is a duty to speak may be estoppel: Woods v. Wilson, 37 Pa. 379; Logan v. Gardner, 136 Pa. 588; Chapman v. Chapman, 59 Pa. 214; Williams v. Life Assn., 163 Pa. 374; Lynd v. Gas Co., 165 Pa. 518.

*Francis L. Roepke* for appellees.—The question is, Was the society bound to make known to the appellants the fact of the unpaid check by the treasurer: Bank v. Cooper, 36 Me. 179; Harrison v. Ins. Co., 8 Mo. App. 37; Screwman v. Ben. Assn., 70 Tex. 168; Lee v. Jones, 17 C. B., N. S. 482; Wayne v. Bank, 52 Pa. 343.

This question has frequently arisen in the Federal courts. The leading case is Bruce and Steele v. U. S., 58 U. S. 437. See also U. S. v. Stone, 106 U. S. 525.

The same doctrine is followed in Pennsylvania: Beyerle v. Hain, 61 Pa. 226.

OPINION BY REEDER, J., February 16, 1897 :

At the time this bond was given, Joseph Stuhl was treasurer of the plaintiff association and Joseph Hart and George Killian were his sureties upon this, his official bond. The plaintiffs are trustees of a benevolent association in the nature of a saving fund society; Stuhl, as treasurer, was, according to the books of the society, indebted in December, 1892, in the sum of about $2,000 to the society. Part of this money consisted of five shares of the Girard Building Association. It was ascertained upon an examination by the trustees that the stock was not in the building association, and at a meeting between its officers and Stuhl, he agreed to transfer five shares of the stock of the building association, held in the name of his children, to the society in lieu of the five shares which appeared upon the books of the association to be held by the society, but which were not in fact so held, as a reimbursement. He also agreed to give a check for $500, and to give a bond with sureties for $600. The check was given, repeatedly presented for payment and payment refused by the bank upon which it was drawn. At the time of the execution of the bond by the sureties, these facts were concealed from Killian and Hart by the trustees of the plaintiff association.

After the bond was signed, the officers of the society ousted Stuhl from his position as treasurer of the society, and this suit is brought to recover the money, the most of which was defalked by Stuhl prior to the execution of the bond.

The assignments of error raise but a single question for our consideration, viz : Whether the contract of suretyship is a good contract, in view of the silence of the trustees when the bond was signed as to their inability to collect their money from Stuhl, and that Stuhl had given them a worthless check in payment of their own money supposed to be in his hands, and had transferred to them the shares of the building association, belonging to his children, in lieu of and to replace the stock he was supposed to hold for them in their name.

It might well be held upon the authority of Bennett v. Haley, 142 Pa. 253 and the cases there cited, that this bond did not apply to moneys not in the possession of the treasurer at the time of its execution, but that the contract of suretyship only

referred to moneys which might thereafter come into his possession.

The condition of this obligation is : That the above bounden Joseph Stuhl, shall and will from time to time " and at all times hereafter, for and during the above mentioned term of office, and for and during any one or more subsequent terms for which he may hereafter be elected treasurer of the said society, and until he shall deliver all the property which he may have received as such treasurer to his successor in office, . . . . well and faithfully perform and discharge all the duties required of him as treasurer, then this bond to be void; otherwise to remain in full force and virtue."

In the case of Bennett v. Haley, supra, the condition of the bond was very much like that in this bond, and yet the court there held, that the sum for which the judgment was confessed (under a warrant of attorney) " was for debts which were such prior to the date of the bond, and which were not covered by its condition. It thus appears from the face of the record, that the judgment was confessed without any lawful authority."

The contention that this obligation did not relate to moneys which had been defalked or abstracted by the treasurer prior to the execution of the bond, but only related to moneys which he had in his possession after its execution, we do not propose to consider. Whether it was a contract of suretyship relating to moneys which he had in his possession prior to its execution, or whether it was only a contract to secure the proper appropriation of such moneys as might come into his possession after its execution, it is unnecessary for us to determine. The determination of this question would necessarily lead into the investigation by a jury (if we should decide this contention in favor of the appellant) of the amount of money which Stuhl had in his possession at the time of the execution of the bond, in order to establish the liability of the sureties. As the consideration and determination of the other assignment of error will finally determine the question without another trial by jury, we prefer to let our decision rest upon that ground alone.

That concealment of a material fact will vitiate a contract of suretyship, is unquestionably the law of this state. When a contract of suretyship is entered into, the surety is entitled to know all the material facts concerning it, and if the person

for whose benefit the suretyship is contracted conceals any material fact of importance in the determination of the surety to undertake the contract, such concealment is a fraud upon the surety and will vitiate the contract.

The court below, in charging the jury, said that if the trustees knew that the treasurer was in default and did not communicate the fact to the sureties, if they knew that they were getting from them an obligation for a man who had proved to be unworthy, that is, unworthy in the sense of having cheated and defrauded the association, then the liabilities of the defendants would not exist. That this is a correct proposition of law, there can be no doubt. But under the facts in the case, we do not think that the charge of the court went quite far enough. Even if the trustees did not know that Stuhl was a defaulter, yet, if from the undisputed facts in the case they had good reason to suspect that he was a defaulter, they were bound to communicate those facts to the sureties at the time they signed the bond, and an omission to do so will relieve the sureties from liability. It is not necessary to cite decisions in support of so well settled a principle. It is in effect saying to the jury, that it was not sufficient for the trustees to know, and knowing, not to communicate to the sureties the facts that the treasurer was insolvent, that they had endeavored unsuccessfully to collect the money due from him to the society, that they had in their possession his dishonored check for the amount which he was supposed to hold in his possession as treasurer of the society, that they had made repeated efforts to get payment of the check and that payment of it by the bank had been refused, that stock he was supposed to hold for them in a building association he did not have, but replaced by having transferred to them stock owned by his children, but that it must appear that the trustees were aware of the fact that he was a defaulter.

The facts as presented are practically undisputed—his shortage, the dishonor of his check, that he did not have the funds in his hands to pay the society, that the stock which appeared as part of the invested funds of the society and which was supposed to be in his possession, was not in fact in his possession at all, and that upon a demand for it he had substituted in lieu of it stock held by his children. Even if it were possible under such circumstances, which we believe highly incredible, for any

intelligent man not to know of the treasurer's defalcation, yet, the facts justified such a strong inference of a defalcation, that the withholding of them upon the part of the society from the sureties on this bond, is such a fraud in law as will vitiate the contract.

Judgment reversed.