## Brewing Company *v.* McLean.

*Principal and surety—Suppression of material facts.*

Where material facts are wilfully suppressed by the obligee from a person about to become surety on a bond by holding out that the obligor was a trustworthy person and that the business on which security for credit was asked, was new and promising, whereas it had already proved disastrous to the obligor who was insolvent because of it, the surety will not be held liable on his bond.

Argued May 9, 1900. Appeal, No. 73, April T., 1900, by defendant, in suit of Goebel Brewing Company, Limited, against George A. McLean, from judgment of C. P. No. 1, Allegheny County, Sept. T., 1897, No. 40, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by ORLADY, J.

Assumpsit. Before SLAGLE, J.

It appears from the record that this action was upon a bond in the penal sum of $1,000, executed by one Nelson as principal and defendant as surety to plaintiff. It appears from the evidence that when the bond was presented, appellant said : " Mr. Sapp, this is something I never did before in my life, and I dislike the idea of doing it." Sapp said : " I assure you it is all right; Nelson has friends down there, and can dispose of the quantity of beer I have stated."

The appellant then said that he understood that Nelson was newly starting in business, and there being no dissent from that proposition, he inquired, " Is this all right, Sapp ? " To which Sapp replied, " I think so." Appellant then executed the bond.

These facts were concealed from the appellant by Sapp and Nelson when appellants signed the bond.

Defendant submitted the following points :

[1. That under all the evidence the verdict must be for defendant. *Answer :* Refused, and bill sealed for defendant.] [1]

[2. That if the jury find from the evidence that before the time when the defendant, George A. McLean, executed the bond sued on, J. M. Nelson was actually engaged in the business mentioned in said bond, and had become indebted to the plaintiffs several hundred dollars, and had allowed a check for

$361.90 to go to protest; and that these facts were not made known to said George A. McLean by plaintiffs, and that said McLean had no knowledge of the same ; then the said bond was a fraud on the said George A. McLean, and the verdict must be for defendant. *Answer :* Refused, and bill sealed for defendant.] [2]

The court charged the jury in part as follows :
[Under the evidence in this case, I instruct you that the plaintiff is entitled to recover the amount of its claim, $490.82, with interest from April 1, 1896, being $88.34, making in all $579.16. There is a question of law that will be considered hereafter, on a motion for new trial, if raised. You will find your verdict now for that amount.] [4]

Verdict and judgment for plaintiff for $579.16. Defendant appealed.

*Errors assigned* among others were (1, 2) in refusing defendant's first and second points, reciting same. (4) To a portion of the judge's charge, reciting same.

*C. C. Dickey*, for appellant.—The plaintiff's agent informed the defendant that it was " all right," when he knew that it was all wrong, and that McLean, if he signed the bond, would have to pay it.

The law upon this subject was settled by this court in Bolz v. Stuhl, 4 Pa. Superior Ct. 52.

In Railton v. Mathews, 10 C. & F. 934, it was decided that mere noncommunication of circumstances affecting the situation of the parties, material for the surety to be acquainted with, and within the knowledge of the party obtaining a surety bond, is undue concealment, though not wilful or intentional, or with a view to any advantage to himself : Smith v. Bank of Scotland, 1 Dow. 272. To the same effect are Sooy v. State, 39 N. J. L. 135, 144, and Wayne v. Commercial Bank, 52 Pa. 343.

*O. S. Richardson*, for appellee.—This claim of concealment and deception is evidently an after-thought. McLean admittedly learned all the facts, and knew of the so-called deception

in February, 1897, and although he was in communication with plaintiff in this matter in the meantime, no word is said by him of this deception or concealment until suit is brought in January, 1897. He signed the bond for Nelson, his friend, and made absolutely no inquiry about the business from October 16, 1895, till he was notified on February 18, 1896, that Nelson was getting behind. He did not ask Nelson as to his financial standing. Sapp, the agent, was a total stranger to him, yet he trusted him and expected him to give him information without inquiry. Ingenuous McLean! A well-known business man of the city. Defendant cannot avail himself of circumstances which were the consequence of his own laches, a principle too well settled to need citation of authority, but see Shaeffer v. McKinstry, 8 Watts, 258.

OPINION BY ORLADY, J., July 26, 1900 :

The defendant executed a bond—as surety for J. M. Nelson who signed the bond as principal—to the plaintiff in the sum of $2,000, conditioned for the prompt payment by Nelson, as follows : " For all beer which may be shipped or delivered to him by said Brewing Company in excess of the sum of one thousand dollars."

The bond was dated October 16, 1895, and signed by the defendant in the presence of a representative of the plaintiff, under the following circumstances. Nelson had been a customer of the plaintiff since September 11, previous. On September 26, he gave to the plaintiff a check for $360.25 to pay for a carload of beer, and then ordered more, the price of which was $325. On October 2, the plaintiffs' agent (Sapp) presented the check of Nelson to the bank on which it was drawn ; at which time it was protested for want of funds to meet it, and it was not paid at the time the bond in suit was signed.

The plaintiff refused to make any further sales to Nelson unless he would give a bond to protect them. On October 4, an agreement in writing was entered into between the plaintiff and Nelson by which the plaintiff was to sell and deliver beer at certain named prices to Nelson, who was to have the exclusive right to sell the plaintiff's product in certain towns, and if a greater credit than $1,000, should be desired by him it was provided that, viz : " a bond shall be furnished in the sum of

two thousand dollars penalty for the faithful payment of such excess over one thousand dollars." W. J. Sapp, the agent of plaintiff in securing the bond, testified as follows: " Q. Did you know at that time that Nelson, the principal, was insolvent? A. Well, I judged so because of a talk I had with him in East Liverpool there, and my people wrote me that they would not ship any more goods unless I got a bond. His credit was extinguished." The defendant's uncontradicted testimony is as follows: " Mr. Sapp, when he came into the office, was introduced to me by Mr. Nelson, and he said that he had been down to East Liverpool for two days, and had thoroughly gone over the ground in that locality and was under the impression that it was a good place; that Nelson no doubt could make considerable money by disposing of their beer there; that the profit per barrel would be about $2.00 and the quantity of beer per month would probably be a car load or so. Nelson said, ' Yes; the field looked to him as if it was all right.' That bond was presented, and I said, ' Mr. Sapp this is something I never did before in my life, and I dislike the idea of doing it.' Mr. Sapp said, ' I assure you it is all right; Nelson has friends down there, and can dispose of the quantity of beer I have stated.' I looked over the bond carefully, and I said: ' If he is newly started into the business there, as you say, I have no hesitation in being of some assistance to Nelson, as I have known him for twenty-five years.' "

The court held, that in the absence of inquiry the plaintiff was not bound to inform McLean of the state of accounts between them and Nelson, and their failure to do so was not a fraud upon him. A verdict for the plaintiff was directed by the court.

It can hardly be supposed that McLean would have signed the bond if he had been informed of the real state of facts. As to the single fact of being indebted to them, it was not the duty of the plaintiff to volunteer information but Sapp, speaking for the plaintiff, directly led McLean to believe that the enterprise was newly started, and after personally investigating the locality, he was of the opinion that Nelson no doubt could make considerable money in it. The very opposite was the truth. The business had been in existence for some time and was so disastrous as to extinguish Nelson's credit; he was

known to be insolvent and indebted to the plaintiff in $1,100, part of which was a dishonored check of $360. These facts were personally known by Sapp, who, when he assured McLean that it was "all right," fraudulently concealed material facts by which Nelson was held out to be a trustworthy person about to embark in a profitable business. When McLean hesitated to sign the bond, the plaintiff, by Sapp, anticipated further or particular inquiry, by representing to him that it was "all right." It cannot be denied that the facts were wilfully suppressed and we hold as matter of law that they were material: Story's Eq. Juris. sec. 215; Bolz v. Stuhl, 4 Pa. Superior Ct. 52.

The first, second and fourth assignments of error are sustained and the judgment is reversed.